ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS S. COLTHURST (CABN 99493)
Chief, Criminal Division

KAITLIN PAULSON (CABN 316804)
KEVIN YEH (CABN 314079)
Assistant United States Attorney

    450 Golden Gate Avenue
    San Francisco, California 94102
    Telephone: (415) 436-6824
    Fax: (510) 637-3724
    Kaitlin.Paulson@usdoj.gov
    Kevin.Yeh@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:20-cr-00329-001 JD |
| Plaintiff, | |
| v. | **UNITED STATES' SENTENCING MEMORANDUM** |
| ERIC HILL, | Hearing Date: May 1, 2023 |
| Defendant. | Time: 10:30 a.m. |
| | Judge: Hon. James Donato |

## I. INTRODUCTION

The defendant Eric Hill appears before this Court for sentencing having pleaded guilty to one count of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951. Dkt. No. 181. For the reasons outlined below, the government—pursuant to the parties' plea agreement—respectfully recommends that the Court impose a low-end Guidelines sentence of imprisonment, here 37 months, to be followed by three years of supervised release, as well as restitution and a $100 special assessment.

## II. BACKGROUND

### A. Offense Conduct

As Hill admitted in his plea agreement, on November 21, 2018, along with his co-defendant Jazz

Svarda, Hill robbed the Walgreens formerly located at 901 Hyde Street, in San Francisco, California. Earlier in the day, both defendants met up in the Tenderloin neighborhood in San Francisco. The men had previously decided to rob the Walgreens. Svarda picked Hill up in Svarda's grey Acura and parked it near 901 Hyde Street, just before 4 p.m. [PSR at ¶ 8; Dkt. No. 181 at 2.]

At approximately 4:12 p.m., Svarda and Hill walked into the Walgreens wearing masks and loitered around the pharmacy register area, seemingly looking at display items. After an employee standing at the register asked if Hill needed help, Hill responded "prescription." Svarda then climbed over the barrier separating the pharmacy area from the customer area and got behind the pharmacy counter, approached one of the two employees there, and stated, "Oxycodone, oxycodone." Svarda also stated to the pharmacy employees: "I have a gun, don't make me use it."[1] [PSR at ¶¶ 8, 11; Dkt. No. 181 at 2.]

Svarda grabbed both arms of one employee and dragged him a short distance toward the time-controlled safes where certain prescription pills were stored. The employee latched onto pharmacy shelves as he was being forcibly dragged by Svarda. Another employee, the pharmacist, opened one of the safes, removed pill bottles from inside, and placed the pill bottles in a white garbage-type plastic bag held by Svarda. Svarda then grabbed additional prescription medicines from the safe. As this was happening, another employee attempted to escape through a side door. Hill grabbed the employee by her work uniform with enough force that buttons broke off the uniform. Svarda and Hill then exited the Walgreens with the stolen prescription drugs. Svarda and Hill fled the scene by car, first in Svarda's Acura and subsequently in a Ford Focus registered to Hill's mother, which Hill frequently used. Location data showed that Hill and Svarda were in the same locations on the day and at the time of the robbery. [PSR at ¶¶ 8, 10; Dkt. No. 181 at 3.]

In total, Hill and Svarda stole approximately 1,176 oxycodone pills, 148 hydrocodone with acetaminophen pills, 50 methyphenidate pills, 128 morphine sulfate pills, 5,676 ml of codeine phosphate, 150 ml of meperidine hydrochloride, 300 methamphetamine hydrochloride pills, and 130 Tapentadol pills. The pills they stole were worth at least $6,099. [PSR at ¶ 11; Dkt. No. 181 at 3.]

---

[1] No witness reported seeing a gun during the robbery. [PSR at ¶ 8.]

UNITED STATES' SENTENCING MEMORANDUM   2
22-cr-00153 CRB

Following the robbery, Hill conducted internet searches on his phone for the pills stolen in the robbery; specifically, Hill searched for the type of pills stolen by entering the physical description of the pill to identify it and its effects. In addition, in the hours and days following the robbery, Hill coordinated with others by text to sell the pills obtained during the robbery. [PSR at ¶ 10.]

### B. Applicable Guidelines Calculation

On January 5, 2023, Hill was convicted of one count of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951. Under Sentencing Guideline § 2B3.1(a), the base offense level for Hobbs Act Robbery is 20. Under Sentencing Guideline § 2B3.1(b)(4), Hill's offense level is increased by two because a person was physically restrained to facilitate the commission of the offense. Additionally, under Sentencing Guideline § 2B3.1(b)(6), Hill's offense level is increased by one because controlled substances were taken. Pursuant to Sentencing Guideline § 3E.1.1, Hill is eligible for a two-point reduction.[2] In addition, pursuant to a global disposition, Hill is eligible for an additional two-point reduction. The adjusted offense level is 19.[3] [Hill Plea, Dkt. No. 181 at 5.] The Presentence Report determined that Hill has a Criminal History Category of III. [PSR at ¶ 37.] As such, the Guidelines range is 37–46 months' imprisonment. Because the Guidelines range falls in Zone D of the Sentencing Table, a minimum term must be satisfied by a term of imprisonment. As detailed below and pursuant to the agreed-upon sentencing recommendation set forth in Svarda's plea agreement, the United States recommends a low-end Guidelines sentence, here 37 months' imprisonment.

### III.   DISCUSSION

#### A.   Applicable Law

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the

---

[2] The parties agreed that, given that Hill entered his guilty plea just days before his trial was scheduled to start, he was not eligible for the one additional point reduction pursuance to U.S.S.G. § 3E1.1(b) (one-point reduction for timely notification to authorities of intention to enter guilty plea, allowing the government to avoid preparing for trial). Dkt. No. 181 at 4–5. The PSR also does not provide for a reduction of the third point. PSR at ¶¶ 16-25.

[3] The PSR does not include the global disposition reduction of two points in its offense calculation that the parties included in the plea agreement and so the adjusted offense level in the PSR is 21. Besides this one difference, the offense calculation in the parties' plea agreement and in the PSR mirror each other. [PSR at ¶¶ 16–25.]

UNITED STATES' SENTENCING MEMORANDUM   3
22-cr-00153 CRB

purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id*. After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

(5) the need to provide restitution to any victims of the offense.

**B.      The Government's Recommendation Is Sufficient But Not Greater Than Necessary**

While Hill eventually demonstrated his acceptance of guilt, it came following years of litigation and on the eve of trial. As it agreed to do in Hill's plea agreement, the government respectfully requests that the Court sentence Hill to a term of imprisonment at the low-end of the Guidelines range—here, 37 months' imprisonment—for the reasons detailed below.

First, the robbery was serious and violent. At least two employees were physically assaulted during the robbery, including one by Hill. Hill pulled on one employee and her clothing with enough force to break buttons off the employee's uniform. All employees experienced fear during the robbery and, to this day, years after the robbery, report that they remain traumatized—cripplingly so, for one victim.

Second, while none of the employee victims received medical attention immediately following the incident, the mental and emotional trauma of the violence cannot be understated. One employee

permanently moved out of San Francisco because of the robbery—she said she experienced too much post-traumatic stress to remain in the city, has been too distraught to seek employment, and reports that her life came to a complete halt on the day of the robbery. The sole pharmacist who was working in the Walgreens on the day of the robbery changed jobs and now no longer works at a retail pharmacy. Another employee, who was studying to gain an advanced degree when this robbery occurred, was derailed from his exams and studies due to the trauma. Hill's conduct had serious implications for his victims, who constantly relive the violence he visited on them to this day. The Walgreens Hill robbed, formerly located on the border between the Tenderloin and Lower Nob Hill and adjacent to the St. Francis Hospital, subsequently closed.

The sentence needs to reflect the nature and circumstances of the offense, the seriousness of the crime, and the need to provide adequate deterrence. A sentence no lower than the low-end of the applicable Guidelines range—here, 37 months' imprisonment—will accomplish this.

The government recognizes that Hill suffers from substance abuse issues. This factor informs the government's recommendation of a low-end Guidelines sentence. However, while this factor may provide some explanation for Hill's conduct, it does not excuse it. Moreover, unlike many defendants, Hill lives in a stable home environment with access to transportation and is clearly capable of obtaining and retaining stable, well-paying jobs with upward mobility, as he has demonstrated during the years-long pendency of this matter. Accordingly, the government proposes a three-year period of supervised release following Hill's period of incarceration, which could provide the treatment and resources Hill needs to address his underlying issues.

### IV. CONCLUSION

After giving full consideration of all the sentencing factors set forth in 18 U.S.C. 3553(a), the United States respectfully requests that the Court impose a low-end Guidelines sentence of 37 months' imprisonment, three years of supervised release, a $100 special assessment, and restitution.

//
//
//
//

DATED: April 17, 2023 

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

        /s/
KAITLIN PAULSON
KEVIN YEH
Assistant United States Attorneys

UNITED STATES' SENTENCING MEMORANDUM    6
22-cr-00153 CRB